HUNYADI, APPELLANT, *v.* SAN ENTERPRISES, INC., ET AL. APPELLEES.

(No. 592—Decided October 29, 1975.)

*Mr. John S. Mitchell,* for appellant.

*Mr. John R. Barrett,* for appellee San Enterprises, Inc.

*Mr. William J. Brown* and *Mr. Robert Holder,* for the administrator of the Bureau of Workmen's Compensation.

VICTOR, P. J. This is a workmen's compensation case.

The appeal is from an order of the trial court directing a verdict for the defendant employer, San Enterprises, Inc., et al (appellees).

The claimant, Hunyadi (appellant), contends that:

"1. The court prematurely ruled upon the motion for a directed verdict, and

"2. Assuming that the ruling was not improper in time, the ruling was erroneous in that the court held that the plaintiff did not sustain a compensable injury."

I.

After the plaintiff testified, the defense made a motion for a directed verdict. The court, after hearing both arguments, said:

"Well, the matter of the motion will be deferred until

we have the testimony of the doctor, and the motion may be reviewed at that time.''

The doctor then testified on direct examination. The court thereafter stated:

"At this point, assuming that counsel for the defendant wants to renew the motion that was made, plaintiff's examination of all the witnesses seems to have been completed, it's the judgment of the court that verdict should be directed for the defendants and the jury discharged.''

Counsel for the plaintiff stated:

''Your Honor, do you not feel that you're a little premature, that the plaintiff has not yet formally rested as yet? I have advised the court, and I am willing to, but I strenuously and obviously disagree with the court's findings, to rest. So that this—. Certainly you don't want to waive your right to cross examination, and I certainly don't want to rest if we don't have to.''

It is apparent from the above that the defense did not wish to waive the right to cross examine the doctor. Furthermore, in argument to this court, plaintiff's counsel admitted that at the time of the ruling on the motion he had no further witnesses to call. The court's assertion that ''plaintiff's examination of all the witnesses seems to have been completed'' was correct. Plaintiff contends that because she did not specifically state "I rest," the court improperly ruled. We disagree.

Civ. R. 50 (A)(1) provides:

"A motion for a directed verdict may be made * * * at the close of the opponent's evidence * * *.''

In oral argument before this court, counsel for the employee honestly admitted he had no further witnesses to call. Yet, he contends that his case was not closed until he uttered the words "We rest." While it is customary for a party to indicate that he "rests" his case, when it is quite apparent that such is the state of a party's evidence that is sufficient. We do not believe any formal wording is necessary to indicate when a party's evidence is "closed.''

## II.

The plaintiff was a ''cabbage roll maker.'' Her job

was to roll up a certain amount of meat in a cabbage leaf and then place the roll in a box.

The meat used was a ground up mixture of different kinds of meat. This mixture was placed into "meat lugs" and kept in a cooler to prevent spoilage. Each morning the plaintiff went to the cooler and got a meat lug and carried it to the table where she made the rolls.

The lugs were of similar dimensions and varied but little in weight averaging between 70 to 75 pounds. On this day, she carried a full lug which was what she carried everyday. The distance from the cooler to the table was the same each day. The lug was uncovered and there was no shifting of the weight of the meat, nor did the plaintiff trip or fall while carrying it.

As she attempted to lift the load to the table in order to overturn and empty it, which was standard operating procedure, she blacked out. The plaintiff testified that she neither over-exerted herself, nor did anything on this occasion that was any different than what she had done day after day.

The plaintiff was hospitalized as a result and her condition was diagnosed (in lay terms) as a heart attack. The plaintiff had a previous history of heart trouble prior to the date of this occurrence.

The plaintiff's doctor testified there was a direct causal connection between the heart attack and the lifting of the lug. The trial judge concluded that the heart attack was not "accidental in character and result" because there was nothing "unforeseen, unexpected and unusual" which either produced the injury or caused the result.

R. C. 4123.01(C) provides:

" 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."

Plaintiff's injury was not caused by accidental means. Was it then accidental in character and result? In *Hearing* v. *Wylie*, 173 Ohio St. 221, Judge Bell declared that the def-

inition of "injury" as now contained in R. C. 4123.01(C) is that contained within *Malone* v. *Industrial Commission,* 140 Ohio St. 292. *Malone* declares, in paragraph two of the syllabus:

"When in connection with an intentional act on the part of a workman which precedes an injury to him, something unforeseen, unexpected, and unusual occurs which produces the injury or from which the injury results, it is accidental in character and result."

In construing the above, *Malone* goes on to say, at page 301:

"While the decedent in this case voluntarily worked in a superheated atmosphere, his death was not the usual and expected result but the unusual and unexpected result of such employment and was, therefore, accidental."

So, too, in this case, a heart attack was not the usual but the unusual and unexpected result of carrying lugs from the cooler to the rolling table. It was, therefore, accidental in character and result.

We reverse the judgment of the lower court and remand this case for further proceedings in accordance with this opinion.

*Judgment reversed.*

HUNSICKER, J., concurs.
MAHONEY, J., dissents.